Filed 4/28/15  Wax v. Mayfield CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| NINA WAX, | |
| Plaintiff and Appellant, | A142531 |
| v. | (Alameda County Super. Ct. No. RG14723395) |
| JENNIFER LEE ANN COLLINS MAYFIELD, | |
| Defendant and Respondent. | |

The trial court issued an injunction protecting Jennifer Lee Ann Collins Mayfield and her husband from Nina Wax (Code Civ. Proc., § 527.6).[1]  Wax appeals in propria persona.  She contends the court erroneously interpreted section 527.6, and insufficient evidence supports the injunction.  We disagree and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

"We summarize the facts in the light most favorable to the judgment."  (*Brekke v. Wills* (2005) 125 Cal.App.4th 1400, 1405 (*Brekke*).)

Mayfield and her husband live in Oakland.  They have two dogs.  Wax and her partner, Michael Hardesty, live three houses away from Mayfield and her husband.  In April 2014, Mayfield requested an injunction requiring Wax to stay 50 yards away from her and her husband.  In her request (Form CH-100), Mayfield stated she and her

---

[1]     All further statutory references are to the Code of Civil Procedure.

1

husband "have been harassed" by Wax and Hardesty "via letters, phone calls, [and] complaints" to the Oakland Police Department (Police Department) and Oakland Department of Animal Control (Animal Control), "as well as fliers being passed around our neighborhood slandering us and our pets as well as giving out our personal information without our consent." Mayfield alleged the harassment was "ongoing since Aug[ust] 2012" and that Wax intimidated her and displayed a "threatening manner" toward her.

The injunction request attached: (1) notices Mayfield received from the Police Department and Animal Control reflecting complaints made about Mayfield's dogs in 2012 and 2013; (2) a flyer encouraging neighbors to report excessive barking from Mayfield's dogs and that the "fence keeping them" from nearby children "is flimsy[;]" (3) a description of Wax's constant complaints about Mayfield's dogs and her behavior toward Mayfield and her husband, and other neighbors; (4) a petition signed by 25 neighbors stating Mayfield's dogs "are NOT a public nuisance to the neighborhood[;]" (5) a declaration from one neighbor averring the "barking has stopped" and "the problem has been addressed and solved[;]" and (6) a declaration from the manager of a neighboring apartment building stating Wax gave him a flyer about Mayfield's dogs, averring his tenants had "no formal complaint" about the barking, and opining the dogs' "presence may have reduced any unwanted activities" near his apartment building. Mayfield also submitted pictures of her backyard fence and the dogs' outdoor kennel.

In her written opposition, Wax denied harassing Mayfield and her husband and explained, "[c]omplaining about barking dogs is not harassment. A neighbor has the right to complain to a city agency about disruption of their [*sic*] right to peace and quiet in and around their [*sic*] residence and to take action for redressing this nuisance." Wax claimed the flyers accurately described how the dogs barked excessively and jumped against Mayfield's fence. Wax also claimed many of the neighbors who signed the petition "do not live near [Mayfield], thus they were not probably able to hear her barking dogs."

2

Eight witnesses testified for Mayfield at the hearing on the request for an injunction. Mayfield's husband testified the complaints to Animal Control ranged "from the dogs barking, to them being aggressive, to them not having food and water, to them not having proper shelter, to them sleeping outside in the rain, to them trying to break down a fence." Mayfield's husband explained he and his wife "invest[ed] in barking collars" and "a sonic aide to help detour the dogs from barking. We have put them in a covered kennel. All to try to rectify a problem of having Animal Control constantly being called on our dogs." Neighbors testified the dogs were well behaved, gentle, and friendly, and that other neighborhood dogs barked more than Mayfield's dogs without complaint from Wax. Mayfield's husband testified his dogs "do not bark excessively" and were being "singled out." He also testified he provided the dogs with adequate food and shelter, and the fence around their property was secure.

Mayfield testified she is afraid of Wax. According to Mayfield, Wax "constantly" calls her, the Police Department and Animal Control to complain about the dogs, screams and stares at Mayfield, and records Mayfield while she is walking outside Wax's house. Mayfield's husband described an incident where he saw Wax on his property, trying to incite the dogs. Wax screamed at him about the dogs "barking all day and night" and about city noise ordinances. Mayfield's husband testified he does not "feel comfortable or safe" around Wax, and had installed cameras on the exterior of the house because he was concerned about his dogs' safety.

Several witnesses described interactions with Wax and testified they too are afraid of her. One neighbor testified she tries "to have limited contact with [Wax]" because she had seen Wax "bully people[.] " Another neighbor described an incident where Wax displayed "aggressive behavior" toward a third neighbor. Another neighbor testified about an incident where Wax ran toward her with a curling iron, and an incident where Wax "ran across the street, charged at [her]" with an air horn, and blew the horn in her face. That neighbor claimed Wax "follows [her] everywhere[,]" watches her constantly, hits her, and calls her derogatory names. A woman who dog sat for Mayfield described an incident where Wax stood on the sidewalk near Mayfield's

3

house and "bark[ed] like a dog towards" the house. Another dog sitter described how Wax frequently drives by Mayfield's house, stops in front of the house, and stares at people inside the house.[2]

The court issued a written order court thoroughly describing the evidence offered at the hearing and finding Mayfield and the "witnesses testifying on her behalf to be credible and compelling. The court does not find the testimony of [Wax] credible." The court concluded Wax "embarked on a course of conduct designed to harass" Mayfield and her husband "by complaining about their dogs where little or no legitimate cause existed. Her actions included attempting to bait the dogs to strengthen her claims, making continuous and harassing phone calls without identifying herself, putting notes threatening legal action in [Mayfield's] mailbox, and posting flyers throughout the neighborhood which included [Mayfield's] private information. Many of these actions were taken despite the fact that [Mayfield] had long before bought a kennel for the dogs and [put] bark control collars on both dogs. . . . [T]he court does not believe that [Wax's] actions were in any way motivated by a legitimate concern for or annoyance caused by [Mayfield's] dogs. The evidence establishes that [Wax's] actions were intended to harass" Mayfield. The court also concluded Mayfield suffered "substantial emotional distress" as a result of Wax's actions. The court observed Mayfield "lives in a constant state of anxiety," "worries when the police will again be called to her house[,]" and had "altered her way of living in response" to Wax's actions.

The court issued a three-year injunction prohibiting Wax from contacting Mayfield and her husband "either directly or indirectly, in any way, including, but limited to, in person, by telephone, in writing. . . ." The injunction also prohibited Wax from harassing, intimidating, or molesting Mayfield and her husband, or disturbing their peace, and from destroying their personal property.

---

[2]     Wax and Hardesty testified at the hearing. Among other things, Wax claimed she called Animal Control because the dogs barked constantly. She denied calling Mayfield or distributing flyers in the neighborhood. Hardesty provided similar testimony.

4

The Legislature enacted section 527.6 "'to protect the individual's right to pursue safety, happiness and privacy as guaranteed by the California Constitution.' [Citations.] It does so by providing expedited injunctive relief to victims of harassment. [Citation.]" (*Brekke, supra,* 125 Cal.App.4th at p. 1412; *Thomas v. Quintero* (2005) 126 Cal.App.4th 635, 648.) Section 527.6 enables "[a] person who has suffered harassment" — defined as "unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose" — to seek "an injunction prohibiting harassment as provided in this section." (§ 527.6, subds. (a)(1), (b)(3).) "The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress" to the party seeking the injunction. (§ 527.6, subd. (b)(3).) A judge may issue an injunction pursuant to section 527.6 upon "clear and convincing evidence that unlawful harassment exists[.]" (§ 527.6, subd. (i).)

We uphold the injunction if there is any reasonable, credible evidence, contradicted or uncontradicted, supporting the court's findings and order. (See *Schild v. Rubin* (1991) 232 Cal.App.3d 755, 762.) "In assessing whether substantial evidence supports the requisite elements of willful harassment, as defined in . . . section 527.6, we review the evidence before the trial court in accordance with the customary rules of appellate review. We resolve all factual conflicts and questions of credibility in favor of the prevailing party and indulge in all legitimate and reasonable inferences to uphold the finding of the trial court if it is supported by substantial evidence which is reasonable, credible and of solid value." (*Id.* at p. 762.)

Wax challenges the injunction on various grounds, none of which have merit. The court did not — as Wax contends without any supporting authority — abuse its discretion by "wrongly interpreting" section 527.6. Nor is the evidence insufficient to support the injunction. Ample evidence supports the court's conclusion that Wax exhibited a "knowing and willful course of conduct" directed at Mayfield that

"seriously alarm[ed], annoy[ed], or harasse[ed]" Mayfield, and that "serve[d] no legitimate purpose." (§ 527.6, subd. (b)(3).) The evidence at the hearing demonstrated Wax called Mayfield constantly, complained to the Police Department and Animal Control without cause, and encouraged Mayfield's neighbors to lodge baseless complaints against Mayfield. She incited Mayfield's dogs, screamed at Mayfield's husband, and acted in a threatening manner toward Mayfield.

The evidence was also more than sufficient to support the conclusion that Wax's conduct actually caused Mayfield substantial emotional distress and would cause a reasonable person such distress. (§ 527.6, subd. (b)(3); *Brekke, supra,* 125 Cal.App.4th at p. 1413.) Mayfield and her husband testified they were afraid of Wax and feared for their safety and the safety of their dogs to the point they installed security cameras on the exterior of their house. Numerous neighbors testified they were afraid of Wax and had seen her "bully people" and display "aggressive behavior." That Wax has an explanation for her conduct or a different interpretation of the evidence does not demonstrate a lack of evidence to support the injunction. Nor has Wax demonstrated the injunction somehow violates her right to "make anonymous complaints regarding crime, blight, [or] noise."

## DISPOSITION

The injunction issued pursuant to Code of Civil Procedure section 527.6 is affirmed. In the interests of justice, the parties are to bear their own costs on appeal.

6

                                    _____

                                    Jones, P.J.

We concur:

_____

Needham, J.

_____

Bruiniers, J.